UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEE RATZEL,

          Plaintiff,

v.                                                         Case No. 05-C-1289

TERRY GABLE,

          Defendant.

## DECISION AND ORDER

Plaintiff Lee Ratzel, a Chapter 980 inmate incarcerated at the Wisconsin Resource Center in Winnebago, brought this action under 42 U.S.C. § 1983. He alleges that defendant Terry Gable, a supervising officer, violated his due process rights when he restrained him and subjected him to a strip search. Gable has now moved for summary judgment and, for the reasons given below, the motion will be granted. Plaintiff's motion for the appointment of counsel will be denied.

**I. Background**

The lawsuit stems from the events of the night of November 28, 2005. Capt. Gable was called in when Ratzel refused to go to his room for the "formal count," the nightly process of making sure all inmates are accounted for.[1] When Ratzel remained sitting in a chair instead of

---

[1] The facts are taken largely from the defendant's proposed findings. The defendant complied with Civil Local Rule 56.1 by sending the applicable warnings to the *pro se* plaintiff. Accordingly, the plaintiff was required to submit a response to the defendant's proposed findings in which he referred to the findings by paragraph number and cited to specific evidence supporting the claim that a genuine dispute exists. *See* Civil L. R. 56.2(b)(2). Because he failed to do so, the defendant's proposed findings are taken as true. It seems, however, that this is not a case involving actual disputes about material facts (e.g., "the guard punched me," "no he didn't"), but more about which facts the parties emphasize and the factual-legal interpretation they apply to those facts. Accordingly, Ratzel's failure to strictly follow the local rules in responding to the defendant's proposed findings does not fatally undermine the factual basis of his claims because many of his

going to his room, and after he failed to respond to Gable's order, the unit was locked down. When Ratzel failed to respond to a team of staff members who told him to go to his room, Gable ordered the staff to use force. The team lifted Ratzel by his arms, brought him to his feet, and attempted to escort him to his room. Ratzel continued to struggle, however, so Gable ordered wrist and leg restraints placed on him. In restraints, Ratzel was brought to a secure unit and placed in a "strip cage."

Ratzel refused to participate in the strip search and was given the option of leaving the strip cage and moving into a new (apparently more private) room in the unit. He did so, and was then handcuffed to his new cell door and strip searched. After the search, Ratzel refused to extend his hands out of his cell door to allow staff to remove his handcuffs. Eventually he acquiesced and his cuffs were removed within a half hour.

Thus far, the events recounted amount to no more than a run-of-the-mill staff-patient interaction involving a relatively minimal use of force. Ratzel was noncompliant with reasonable staff requests, and they responded by restraining him and took him to a segregated cell. Presumably similar things occur hundreds or thousands of times per day in state facilities across the country. Ratzel's version of events adds a few twists. Primary among them is his claim that his noncompliance with Gable's orders was not due to intransigence but rather to the fact that he was suffering serious pain in his hand. (Ratzel Aff., ¶ 4.) His expressions and impressions of pain apparently overwhelmed his ability either to comply with staff requests or to communicate with them when they ordered him to his room. He also complains that Terry Gable was not a medical staff member competent to make the medical decision to not treat Ratzel at that time.

---

own factual assertions supplement, rather than contradict, the defendant's proposed findings. I will thus address the factual assertions Ratzel raises where applicable.

2

A second twist Ratzel raises is the notion that he was not a serious threat to anyone's health or safety and that there was simply no reason to restrain him or conduct a strip search. (Ratzel Aff., ¶ 6.) Therefore, in his view the actions of the defendant were not just unreasonable but were malicious and sadistic efforts to deprive Ratzel of his rights. In addition, he complains that the strip search was visible through the windows of other inmates. Although Gable ordered that their windows be blocked off during the search, Ratzel states that they remained open and that this violated his privacy. (Ratzel Aff., ¶ 9.) In sum, he claims, the staff's actions on the night of November 28, 2005, were not "proactive" and were not the least restrictive approaches to maintaining security consistent with Ratzel's treatment needs. (Ratzel Aff., ¶ 10.)

**II. Analysis**

This case arises under the so-called substantive component of the Due Process Clause, which protects individuals against arbitrary government actions. In such a case, "the appropriate inquiry is not whether governmental authorities afforded the individual certain procedural protection. Rather, the inquiry is whether the individual has been subjected to 'the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.'" *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 768 (7th Cir. 2004) (quoting *Bank of Columbia v. Okely,* 17 U.S. (4 Wheat.) 235, 244 (1819)). Thus, Ratzel is complaining not about the procedures used by the defendant but is claiming the defendant's actions were arbitrary and malicious.

In the context of involuntarily incarcerated individuals, substantive due process means that such individuals are guaranteed a certain level of freedom and support that recognizes their status as involuntary civil committees rather than prisoners. As the Supreme Court found in *Youngberg v. Romeo,* an institutionalized person in state custody "enjoys constitutionally protected interests

3

in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." 457 U.S. 307, 324 (1982). Thus, the court's recognition that liberty restrictions must be "*reasonably* nonrestrictive" necessitates a balancing of the obvious security interests of the state facility versus the liberty interests of the inmate.

The analysis also sensibly requires that a court sitting in a location and time remote from the events at issue must grant a level of deference to the state officials at the scene. As another court has noted, "nothing in *Youngberg* suggests that the choice made by the institution must have been the least restrictive alternative available. To the contrary, *Youngberg* admonishes judges to respect the choices made by professionals at state institutions." *Thielman v. Leean,* 140 F. Supp.2d 982, 992 (W. D. Wis. 2001). Practically speaking, it will only be those state actions that are clearly excessive and arbitrary that constitute substantive due process violations: as the Supreme Court found in *Bell v. Wolfish*, "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." 441 U.S. 520, 528 (1979). In *West v. Macht,* a Chapter 980 case, Judge Adelman distilled these considerations by focusing on whether the state actions were rationally related to institutional security. 235 F. Supp.2d 966, 974-75 (E. D. Wis. 2002) ("I conclude that Bennett's August 7 to August 11 seclusion was rationally related to the purpose of maintaining institutional security and cannot be reasonably characterized as punitive.") Put another way, if a defendant's act is rationally related to a legitimate institutional purpose it is not an arbitrary act.

Implicit in this analysis is the fact that a Chapter 980 facility like the WRC is somewhat different from the prison, jail, or mental hospital settings addressed in other cases. A Chapter 980

4

facility is not a prison or jail, but neither is it simply a mental hospital. Chapter 980 effectuates the civil detention of those who have been convicted of a sexually violent crime and who are deemed to constitute a danger in the future. *See State v. Post,* 541 N.W.2d 115 (1995). As such, in considering whether state actions are rationally related to institutional security, a court must give considerable weight to the security concerns of the facility's staff and should only disturb those efforts when there is evidence of arbitrariness or excessive punitive force. That is, the determination of whether an official's act is "excessive" must necessarily account for the context and setting in which the action occurred; put another way, what might seem excessive or arbitrary in a state mental hospital might not be excessive in a Chapter 980 facility.

With these considerations in mind, I conclude that the defendant's actions were reasonably related to the maintenance of security within the WRC. Even accepting Ratzel's averments as true, nothing suggests that Gable's actions were arbitrary or excessively punitive in relation to his stated goal of maintaining institutional security.² First, Ratzel's claim that he was debilitated by the pain in his hand does not undermine the defendant's contention that Ratzel was uncooperative and failed to respond to the staff's demand that he return to his cell for the formal count. In other words, the two scenarios are not mutually exclusive. In their effort to maintain security, staff may reasonably require inmates to comply with standard security policies regardless of whether the inmate is experiencing some sort of physical discomfort – to hold otherwise would allow inmates to pick and choose when to follow orders based on their own subjective medical claims. Thus, the fact that

---

²Ratzel does not really dispute that the 9:30 p.m. formal count is a valid security practice, nor does he dispute the general requirement that patients be strip searched when moved to a new cell. His arguments are directed instead at showing that the defendants' actions *in this instance* were excessive and unnecessary.

5

Ratzel may have been in pain at the time does not render Gable's response to his noncooperation an arbitrary act.

Of course this does not mean staff may ignore an inmate in obvious need of medical treatment, because that could give rise to a claim of deliberate indifference.[3] But deliberate indifference is a separate issue implicating the adequacy of medical care rather than the constitutional implications of using physical restraints or placement in a segregated cell. The fact that the plaintiff may have been in pain does not, under these circumstances, mean that the defendant was not entitled to order the plaintiff restrained or transferred to another cell. Thus, the evidence shows that although the plaintiff may have been experiencing hand pain, the defendant's decision to restrain him and place him in a segregated cell was reasonably related to the security needs of the institution. Absent some sort of major medical emergency requiring immediate attention, of which there is no evidence here, the defendant's decision to restrain the plaintiff under these circumstances cannot be deemed arbitrary or excessive.

The plaintiff's other complaint is that other patients were allowed to see him naked. (Ratzel Aff., ¶ 8.) He admits that Gable ordered the windows of the other cells to be blocked, but states that Gable failed to follow through and ensure that his orders were carried out. This does not give rise to any constitutional violations, however. First, Ratzel does not even allege that Gable intentionally ordered the strip search in full view of other prisoners; he alleges only that Gable's orders were not complied with. A § 1983 claim requires the defendant to act purposely, not merely negligently, and that is the worst that Ratzel alleges. Moreover, *respondeat superior* does not apply in § 1983 cases,

---

[3]The plaintiff uses the phrase "deliberate indifference" but directs it at the defendant's actions in ordering him restrained and strip searched. (Pltf. Br. at 2-3.) He does not, in other words, bring a claim alleging deliberate indifference to the plaintiff's serious medical needs.

6

meaning that in these circumstances Gable cannot be held responsible for the acts of those who failed to follow his orders. *Kramer v. Village of North Fond du Lac,* 384 F.3d 856, 867 (7th Cir. 2004). Second, it is doubtful that appearing naked for a brief period of time while incarcerated would suffice to offend substantive due process. "'There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation.' Being made to stand naked twenty minutes as part of a random drug-testing policy is not a 'sufficiently serious' condition of confinement to rise to the level of a constitutional violation." *Whitman v. Nesic,* 368 F.3d 931, 935 (7th Cir. 2004) (quoting *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir. 2003)).

In sum, I conclude that the defendant's restraint and use of force was reasonably related to a legitimate security interest; I further conclude that the plaintiff's constitutional rights were not violated when one or more prisoners may have been able to see him naked for a brief period of time. The defendant's motion for summary judgment is therefore GRANTED. The motion to compel and motion to appoint counsel are DENIED.[4]

Dated this __3rd__ day of November, 2006.

                                                    s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge

---

[4] The plaintiff's earlier request for appointment of counsel was denied. I conclude that the facts of this case, which are largely undisputed, were ably set forth by the plaintiff. And because the nature of the claims is not complex, the aid of counsel would be minimal. Accordingly, this is not the sort of case in which I would request that counsel assist a plaintiff.

7